

**U.S. Department of Justice**

*United States Attorney
District of Maryland
Northern Division*

*CAH 10/1/2021*
Kim Y. Oldham
*Assistant United States Attorney*
Kim.Oldham@usdoj.gov

*Mailing Address:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*Office Location:*
*36 S. Charles Street, 4th Floor*
*Baltimore, MD 21201*

*DIRECT: 410-209-4944*
*MAIN: 410-209-4800*
*FAX: 410-962-3124*

November 4, 2021

Laura Abelson
Jeffrey Dahlberg
Office of the Federal Public Defender
100 S. Charles Street, Suite 900
Baltimore, Maryland 21201

Re:   United States v. Khalil Shaheed
        Criminal No. CCB-19-0526

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Khalil Shaheed (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by ~~November 1,~~ 2021, it will be deemed withdrawn. The terms of the Agreement are as follows: November 8

### Offenses of Conviction

1. The Defendant agrees to plead guilty to the following counts of the Superseding Indictment: Count 3, which charges the Defendant with possession with intent to distribute controlled substances on November 16, 2017, in violation of 21 U.S.C. § 841; Count Five, which charges the Defendant with possession of firearms in furtherance of a drug trafficking crime on November 16, 2017, in violation of 18 U.S.C. § 924(c); Count Seven, which charges the Defendant with possession with intent to distribute on November 20, 2019, in violation of 21 U.S.C. § 841; and Count Eight, which charges the Defendant with Possession of a Firearm by a Prohibited Person on November 20, 2019, in violation of 18 U.S.C. § 922(g). The Defendant admits that the Defendant is, in fact, guilty of the offenses and will so advise the Court.

### Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Rev. August 2018

That on or about the time alleged in the Superseding Indictment in Counts 3 and 7, in the District of Maryland:

    a.    The Defendant knowingly and intentionally possessed the substances alleged in Count 3 and Count 7 respectively, which include a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance (as to each Count), and a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a quantity of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)piperidin-4-yl] propanamide, also known as fentanyl, a Schedule II controlled substance (as to Count 3);

    b.    The substances or mixtures did in fact contain detectable amounts of cocaine, heroin, or fentanyl, as alleged; and

    c.    The Defendant possessed the substances with the intent to distribute them.

That on or about the time alleged in the Superseding Indictment in Count 5, in the District of Maryland:

    a.    The Defendant committed a drug trafficking crime prosecutable in federal court;
    b.    The Defendant knowingly possessed a firearm; and
    c.    the possession of the firearm was in furtherance of the defendant's drug trafficking crime.

That on or about the time alleged in the Superseding Indictment in Count 8, in the District of Maryland:

    a.    The Defendant knowingly possessed a firearm;
    b.    Before he possessed the firearm, the Defendant had been convicted of a crime punishable by imprisonment for a term in excess of one year;
    c.    The Defendant knew that he had previously been convicted of a crime punishable by imprisonment for a term of more than one year; and
    d.    The possession of the firearm was in or affecting interstate commerce.

### Penalties

3.    The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 3 | 21 U.S.C. § 841 | N/A | 20 years | 3 years min/Life max | $1,000,000 | $100 |
| 5 | 18 U.S.C. § 924(c) | 5 years, consecutive to any other count | Life | 5 years | $250,000 | $100 |
| 7 | 21 U.S.C. § 841 | N/A | 20 years | 3 years min/Life max | $1,000,000 | $100 |
| 8 | 18 U.S.C. § 922(g) | N/A | 10 years | 3 years | $250,000 | $100 |

        a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

        b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

        c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

        d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

        e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

        f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay,

and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be

admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

  5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

  6.  This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

    a. *Count Three* – This Office and the Defendant agree that the applicable base offense level for Count Three is **22** under U.S.S.G. § 2D1.1(c)(9) because the Defendant possessed at least 80 kilograms but less than 100 kilograms of converted drug weight.

    b. *Count Five* – This Office and the Defendant agree that the applicable base offense level for Count Five is 5 years incarceration, which must be consecutive to any other sentence imposed, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.4(b).

c. *Count Seven* - This Office and the Defendant agree that the applicable base offense level for Count Seven is **12** under U.S.S.G. §2D1.1(c)(9) because the Defendant possessed less than 50 grams of cocaine.

d. *Count Eight* – This Office and the Defendant agree that the applicable base offense level for Count Eight is **20**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(4).

e. *Grouping* – The underlying drug trafficking crimes referenced above group pursuant to U.S.S.G. § 3D1.2(d). Pursuant to U.S.S.G. § 3D1.3(b) the offense level for the grouped counts is the offense level corresponding to the aggregated drug quantity. The Parties stipulate and agree that the converted drug weight in this case is at least 80 kg but less than 100 kg, and therefore pursuant to 2D1.1(c)(9) the **combined base offense level is 22**.

f. This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level decrease** in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

g. *Upward Departure* –This Office's position is that pursuant to U.S.S.G. § 5K2.1, an upward departure is appropriate because a death resulted. The defense disagrees and opposes an upward departure.

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.  Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Obligations of the Parties

9.  Subject to paragraph 10 below, at the time of sentencing, this Office and the Defendant will request that the Court impose a sentence of **between 96 months and 144 months of imprisonment** in the custody of the Bureau of Prisons, a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant. [handwritten: including the indictment in 19-527 in CCB]

### Rule 11(c)(1)(C) Plea

10.  The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **between 96 months and 144 months of imprisonment** in the custody of the Bureau of Prisons – is the appropriate disposition taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw the Defendant's plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw the Defendant's plea.

### Waiver of Appeal

11.  In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a.  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b.  The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of

imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

      ii. The Defendant reserves the right to appeal the sentence of imprisonment if the total term of imprisonment exceeds **144 months**; and

      iii. This Office reserves the right to appeal the sentence of imprisonment if the total term of imprisonment is less than **96 months**.

      c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

    a. approximately $12,452.36 in U.S. currency recovered from the Defendant's residence on November 16, 2017;
    b. one tan Sig Sauer P250 9mm firearm, bearing serial number EAK044411;
    c. one silver Auto Raven Arms .25 firearm, bearing serial number 613314;
    d. a box of .357 bullets (approximately 38);
    e. a box of 9mm bullets (approximately 50);
    f. a box of .25 auto bullets (approximately 44);
    g. approximately 14 9mm bullets; and
    h. one Lorcin .25 caliber semi-automatic handgun (serial # obliterated).

14. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

19. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not

required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

/S/
_____
Kim Y. Oldham
Assistant United States Attorney
Jeffrey M. Hann
Special Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11-8-21
_____
Date

_____
Khalil Shaheed

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the

Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

11/8/21
Date

Jeffrey Dahlberg
Laura Abelson

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On October 17, 2017, Harford County Sheriff's Office detectives responded to 617 Burlington Court, Edgewood, MD for an unattended death. The victim, M.B., was a 25year-old male found deceased on the floor of his bedroom, with a syringe in his hand. On a nearby dresser deputies located hypodermic syringes, a spoon, and suspected heroin in a clear plastic wrapper. The suspected heroin was tested and determined to be Fentanyl (Schedule II) and Tramadol (Schedule IV). An autopsy determined that the victim died of fentanyl and tramadol intoxication.

The victim's cellphone was seized for examination. The contents of the victim's phone showed that he purchased heroin on multiple occasions from someone saved in his contacts as "T," using the phone number (202) 676-7391. Text messages between the victim and "T" showed that the victim purchased heroin from "T" on 10/4, 10/6, 10/7, 10/10, 10/11, 10/12, 10/13, with the victim's final purchase from "T" on 10/14 at approximately 10:21 a.m. On that date, "T" directed M.B. to "come to the Giant shoppin center" and then followed up with another text that said, "bathroom." Cell site location information for M.B.'s cellphone indicate that he was in the area of the Giant store on Sinclair Lane in Baltimore at the time these text messages were sent to "T." M.B. then texted "T," "I'm walking in now" and "I'm in the bathroom."

The victim sent his last text message on 10/15 at 1:49 a.m. to a friend about plans for the next night. Any subsequent text messages sent to the victim's cellphone went unanswered, including "Happy Birthday" messages from friends and family on 10/15. According to the medical examiner, the amount of decomposition present was consistent with M.B. dying 2-3 days prior to the discovery of his body on October 17.

Investigators focused the investigation on a blue Acura with MD tag 3CT8605 registered to the Defendant, Khalil Sadiq Shaheed. Further database checks showed the Defendant's listed address as 3543 Shannon Drive, Baltimore. Investigators conducted physical surveillance and confirmed that the Defendant resided at the Shannon Drive residence and drove the blue Acura. On November 9, 2017 at 12:26 p.m., investigators observed the Defendant come out of the Shannon Drive address, get into the blue Acura and drive to the Royal Farms at 6201 Pulaski Highway in Baltimore. The Defendant circled the lot, stopped at a gas pump, and did not exit the vehicle. He pulled into a spot directly in front of the store, exited his vehicle and stood next to it while on his cell phone. The Defendant looked around the parking lot as if looking for someone. Minutes later the Defendant walked into the Royal Farms and a detective followed. The Defendant walked directly into the bathroom. The detective followed the Defendant into the bathroom. As the detective opened the door to the bathroom, the Defendant was already on his way out. Walking directly behind the Defendant was another male subject. No one else was in the bathroom at the time and the Defendant was only in the bathroom for moments. The Defendant then exited the

store without making any purchases. Believing that a drug deal just occurred, the detectives followed the Defendant as he drove directly back to his residence on Shannon Drive. Later that afternoon, investigators obtained a court order to install a GPS device on the Defendant's Acura.

On November 14, 2017, at 1:40 p.m., investigators conducted surveillance on the Defendant as he drove his Acura from his residence to an apartment complex on Sinclair Lane. The Defendant drove around the parking lot and then left the area. He then drove to the 4700 block of Elison Avenue and parked along the street. Investigators observed him meet briefly with the driver of a blue Honda CRV parked in front of his vehicle. Both vehicles then left the area.

Investigators also learned that the Defendant was employed with Canada Dry as a merchandiser and that the Giant store on Sinclair Lane was one of the company's accounts. That Giant store is located approximately 1.5 miles from the Defendant's residence on Shannon Drive.

On November 16, 2017, investigators obtained search warrants for 3543 Shannon Drive and the blue Acura. Prior to executing the search warrants, the detectives conducted surveillance and observed the Defendant meet with a suspected drug customer in the Defendant's Acura. Detectives executed the warrant on the vehicle and arrested the Defendant. Detectives also seized the cellphone of the customer and conducted a search of its contents. The customer had the name "T" saved in his contacts with cell phone number (202) 676-7391, the same phone number found in M.B.'s cellphone saved under "T."

In the Defendant's Acura, they recovered a 9mm Sig Sauer handgun on the floorboard of the driver's side where the Defendant had been seated. In the door of the car, they recovered a bag containing suspected cocaine and heroin packaged for distribution. They then proceeded to the residence on Shannon Drive, and, during the search there, they recovered additional drugs, a Raven Arms .25 caliber handgun, quantities of suspected heroin, cocaine, and fentanyl, approximately $12,452.36, as well as ammunition. The drugs from both locations were submitted to the DEA for analysis and tested positive for cocaine, heroin, and fentanyl. The total net weight of drugs recovered was calculated to be approximately 82 grams of cocaine, a schedule II controlled substance; 55 grams of heroin, a schedule I controlled substance; and 7 grams of fentanyl, a schedule II controlled substance. The total combined weight of these substances was equivalent to approximately 90.6 kilograms of Converted Drug Weight. Also recovered from the Defendant's residence was a cellphone with the number (202) 321-8518. The contents of that phone include texts to others in June of 2017 advising that the Defendant was changing his number to (202) 676-7391, the number that the victim, M.B., had saved under "T."

The Defendant was subsequently charged in the Circuit Court for Baltimore City based on the evidence recovered from the car search and home search. Those charges were later dismissed; however, the Defendant was arrested and charged with other state offenses. Meanwhile, a federal investigation into the Defendant's drug trafficking activity was ongoing, and on November 6, 2019, a federal grand jury indicted the Defendant on charges related to the distribution of fentanyl to the victim M.B. in October 2017, possession with intent to distribute controlled substances in November 2017, and possession of the firearms. An arrest warrant was issued based on these charges.

On November 20, 2019, federal investigators located the defendant still residing at the Shannon Drive residence and executed a federal arrest warrant. They observed indicia of drug activity in plain view while executing the arrest and then obtained a warrant to search the residence for drug evidence. They recovered 6 bags of suspected controlled substances and another firearm, a Lorcin .25 caliber semi-automatic handgun. The suspected controlled substances were submitted to the DEA for analysis, and 4 of the bags tested positive for cocaine with an approximate net weight of 0.613 grams.

The Defendant stipulates and agrees that on November 16, 2017, he knowingly possessed the 9mm Sig Sauer handgun and the Raven Arms .25 caliber handgun, and that the possession of the firearms was in furtherance of the Defendant's drug trafficking crime on that date. He further stipulates that on November 20, 2019, he knowingly possessed the Lorcin .25 caliber handgun, knowing he had been previously convicted of a crime punishable by imprisonment in excess of one year. Specifically, the Defendant was convicted of possession with intent to distribute in the Baltimore County Circuit Court in January of 2016. The parties further stipulate and agree that each firearm meets the definition of a firearm pursuant to 18 U.S.C. § 921 and that the firearms were not manufactured in Maryland. Accordingly, the firearms recovered in this investigation traveled in and affected interstate commerce.

The Defendant further stipulates and agrees that the substances recovered from his vehicle and residence in November 2017 were in fact cocaine, heroin and fentanyl; that he knowingly possessed those substances; and that they were intended for distribution. He also stipulates and agrees that the substance recovered from his residence in November 2019 was in fact cocaine; that he knowingly possessed that substance; and that it was intended for distribution.

SO STIPULATED:

/S/
_____
Kim Y. Oldham
Assistant United States Attorney
Jeffrey M. Hann
Special Assistant United States Attorney

_____
Khalil Shaheed
Defendant

_____
Jeffrey Dahlberg
Laura Abelson
Counsel for Defendant